ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| OLGA RODRÍGUEZ MATOS,<br><br>Recurrida,<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS**; MUNICIPIO DE SAN JUAN; COOPERATIVA ESTACIONAMIENTO DE LOS EMPLEADOS DEL CENTRO GUBERNAMENTAL MINILLAS h/n/c COOPEEM; UNIVERSAL INSURANCE COMPANY; JOHN DOE; JANE DOE; RICHARD ROE; COMPAÑÍA DE SEGUROS X, Y, Z,<br><br>Peticionaria. | KLCE202400257 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan.<br><br>Civil núm.: K DP2016-0964.<br><br>Sobre: daños y perjuicios. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 4 de abril de 2024.

La controversia ante nuestra consideración se limita a considerar si la demanda en este caso es susceptible de continuar su curso, o si la acción federal de quiebra del Estado impide su continuación. En particular, nos corresponde determinar si la orden modificatoria emitida por el foro federal el 20 de octubre de 2022, debe ser interpretada a los fines de excluir a este pleito - instado previo a la presentación de la quiebra - del *injunction* permanente contenido en el *Confirmation Order* del 18 de enero de 2022, según modificado el 20 de octubre de 2022.

Adelantamos que coincidimos con la postura articulada por el Estado y concluimos que, a la luz de los hechos particulares del caso del título, el Tribunal de Primera Instancia, Sala Superior de San Juan, carecía de

jurisdicción para decretar su reapertura. Por ello, expedimos el auto de *certiorari* y revocamos la resolución del foro primario.

I

A

El 29 de febrero de 2024, la parte peticionaria, Estado Libre Asociado de Puerto Rico (Estado), en representación del Departamento de Transportación y Obras Públicas (DTOP), instó el presente recurso de *certiorari*, con el fin de que este Tribunal revoque la *Resolución* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 14 de diciembre de 2023, notificada el 20 de diciembre de 2023. En esta, el foro primario reiteró la reapertura del caso y la continuación de los procedimientos al amparo del *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction* (Orden de Modificación), que emitió la Hon. Laura Taylor Swain, Jueza de Distrito de los Estados Unidos, el 20 de octubre de 2022.

Los trámites anteriores a la presentación de este recurso fueron como sigue.

B

El **25 de agosto de 2016**, la Sra. Olga Rodríguez Matos (señora Rodríguez Matos o recurrida) presentó una *Demanda*[1] sobre daños y perjuicios en contra del Estado Libre Asociado, el DTOP, el Municipio de San Juan (Municipio), la Cooperativa Estacionamiento de los Empleados del Centro Gubernamental Minillas (COOPEEM), Universal Insurance Company, y varios demandados y aseguradoras de nombre desconocido. En síntesis, alegó que, el **16 de septiembre de 2015**, sufrió una caída mientras caminaba por la acera de la Calle Latimer, Parada 22 en Santurce, frente al estacionamiento de la COOPEEM. Sostuvo que, como consecuencia del desnivel en la acera, cayó y sufrió múltiples laceraciones corporales, por lo que tuvo que recibir tratamiento médico y terapia física. Adujo que las condiciones peligrosas eran de conocimiento de todos los

---

[1] *Véase*, apéndice del recurso, a las págs. 1-4.

demandados. En virtud de lo anterior, solicitó una suma no menor de $100,000.00, por los daños físicos sufridos, y una suma no menor de $30,000.00, por concepto de los sufrimientos y angustias mentales.

Tras varios trámites procesales, el **19 de abril de 2017**, la señora Rodríguez Matos presentó su *Primera Demanda Enmendada* a los fines de incluir a la Autoridad de Carreteras y Transportación (ACT) y a MAPFRE PRAICO Insurance Company.

En lo pertinente, el 23 de mayo de 2023, el Estado presentó un *Aviso de paralización de los procedimientos*[2]. Argumentó que, conforme al Título III de la Ley Pública Núm. 114-187, intitulada *Puerto Rico Oversight Management, and Economic Stability Act* (PROMESA), 48 USC sec. 2101, *et seq.*, el **3 de mayo de 2017**, la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta) presentó una petición de quiebra a nombre del Gobierno de Puerto Rico. En específico, señaló que, en virtud de las secciones 362 y 922 del Código de Quiebras de los Estados Unidos, 11 USC secs. 362(a) y 922(a), la presentación de la petición tenía el efecto automático, inmediato y directo de paralizar toda acción civil que cualquier persona natural o jurídica iniciase o intentase continuar, o de la cual se solicitara la ejecución de una sentencia contra el Estado, mientras los procedimientos de quiebra se encontrasen pendientes ante ese tribunal. Cónsono con lo anterior, solicitó que el foro primario tomara conocimiento judicial de la petición de quiebra y, en consecuencia, paralizara todos los procedimientos pendientes en el caso del título[3].

El 27 de junio de 2017, el foro primario emitió una *Sentencia*[4], notificada el 30 de junio de 2017, en la cual decretó la paralización de los procedimientos y ordenó su archivo administrativo sin perjuicio. A su vez, se reservó la jurisdicción para decretar la reapertura del caso a solicitud de parte.

---

[2] *Véase*, apéndice del recurso, a las págs. 106-109.

[3] *Íd.*, a las págs. 122-124.

[4] *Íd.*, a las págs. 125-128.

Entre el 2017 al 2023, el caso federal de quiebra del Estado[5] corrió su curso. En lo pertinente a este recurso, mediante su *Orden de Confirmación del Plan de Ajuste de la Deuda del Gobierno de Puerto Rico*, que entró en vigor el **15 de marzo de 2022**, el tribunal dispuso un mecanismo de interdicto permanente para ciertas reclamaciones, el cual tuvo el efecto de sustituir el mecanismo de la paralización automática inherente a la presentación de la quiebra.

Posteriormente, el **20 de octubre de 2022**, el tribunal federal emitió una *Orden de Modificación* de su orden de confirmación mediante la cual, entre otras cosas, autorizó la continuación y conclusión de ciertas reclamaciones instadas al amparo de la *Ley de Reclamaciones y Demandas contra el Estado*, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA sec. 3077, *et seq.* (Ley de Pleitos contra el Estado), y cuyos reclamos monetarios no excedieran los límites allí estatuidos[6].

Ante este escenario, el **1 de agosto de 2023**, la señora Rodríguez Matos presentó ante el foro primario una *Moción solicitando la reapertura y continuación de los procedimientos*[7]. Aludió a la *Orden de Confirmación* y a la *Orden de Modificación* dictadas en la acción de quiebra federal, y planteó que dichas órdenes permitían la continuación de este litigio hasta la etapa de sentencia y su ejecución. Por tanto, solicitó la reapertura del caso del título, toda vez que ya no estaba afectado por la paralización.

El 26 de septiembre de 2023, el foro primario emitió una *Orden*[8], que se notificó el 28 de septiembre de 2023, en la cual ordenó la reapertura del caso.

Posteriormente, el 17 de noviembre de 2023, el Estado presentó una *Comparecencia Especial*[9]. En lo pertinente, arguyó que, a base de la

---

[5] Véase, *In re: Commonwealth of Puerto Rico*, caso núm. 17BK3283-LTS.

[6] Tal cual discutiremos más adelante, la interpretación de esta orden modificatoria y su extensión constituye la médula de este recurso.

[7] *Véase*, apéndice del recurso, a las págs. 152-162.

[8] *Íd.*, a las págs. 161-163.

[9] *Íd.*, a las págs. 168-175.

información provista por la recurrida, no podía determinar si esta había presentado o no un *proof of claims* en la acción federal de quiebra. Consecuentemente, solicitó que se le ordenase a la señora Rodríguez Matos que informara al tribunal si había presentado un *proof of claim* con relación al caso del título y que proveyera copia de este. Enfatizó que, si la recurrida no había presentado el correspondiente *proof of claim*, la reclamación contra el Estado debía ser desestimada con perjuicio. De otra parte, si lo había hecho, el Estado tenía que determinar si la reclamación debía ser atendida a través del caso del título o mediante el proceso de reclamaciones del Título III de PROMESA. Por último, aclaró que los hechos del caso ocurrieron en el 2016; es decir, antes de la petición de restructuración de la deuda el 3 de mayo de 2017, por lo que los procedimientos continuaban paralizados en cuanto al Estado y el foro primario carecía de jurisdicción.

Por su parte, el 7 de diciembre de 2023, la recurrida presentó una *Moción*[10], en la que arguyó que el dictamen de la jueza Taylor Swain, quien preside el proceso de la quiebra del Estado, había sido modificado a los fines de permitir las reclamaciones al amparo de la Ley de Pleitos contra el Estado sin distinción alguna. Sostuvo que la única limitación era que la demanda no excediera los límites estatutarios de $75,000.00 o $150,000.00[11].

Examinados los planteamientos de las partes litigantes, el 14 de diciembre de 2023, el foro primario emitió una *Resolución*[12], notificada el 20 de diciembre de 2023, en la cual autorizó la enmienda a la demanda, sostuvo su determinación previa sobre la reapertura del caso y, en consecuencia, ordenó la continuación de los procedimientos.

En desacuerdo con la determinación del foro primario, el 29 de diciembre de 2023, el Estado Libre Asociado presentó su *Solicitud de*

---

[10] *Véase*, apéndice del recurso, a las págs. 177-195.

[11] La recurrida presentó como anejo un documento intitulado *Evidencia de reclamo por gastos administrativos*, fechado el 27 de mayo de 2022.

[12] *Véase*, apéndice del recurso, a las págs. 196-198.

*Reconsideración*.[13] En síntesis, indicó que el documento que había presentado la recurrida con su moción del 7 de diciembre de 2023, era solo la evidencia de su reclamo ante el foro federal por concepto de los gastos administrativos; por tanto, ello no constituía el *proof of claim* requerido en los casos pre petición, cuya fecha de presentación había expirado el 29 de mayo de 2018. Enfatizó, además, que no procedía continuar los procedimientos, pues la *Orden de Confirmación*, según modificada, solo había autorizado la continuación de las reclamaciones instadas al amparo de la Ley de Pleitos contra el Estado cuyos hechos hubieran ocurrido luego de presentada la petición de quiebra. Insistió en que la *Orden de Modificación* solo aplicaba a los casos post petición. Por tanto, razonó que el tribunal carecía de jurisdicción, por lo que procedía mantenerlo paralizado.

El 16 de enero de 2024, la señora Rodríguez Matos presentó una moción[14], en la que apuntó que, por error, había presentado el documento incorrecto. En esta ocasión, adjuntó copia del *proof of claim* núm. 8722, presentado en el caso de quiebra el 30 de abril de 2018. Insistió en que la *Orden de Modificación* aplicaba a las reclamaciones contra el Estado que hubieran surgido o hubieran sido instadas tanto antes como después de la petición quiebra.

El 25 de enero de 2024, notificada el 30 de enero de 2024, el foro primario declaró sin lugar la solicitud de reconsideración del Estado[15].

Inconforme, el peticionario instó este recurso de *certiorari* el 29 de febrero de 2024, y le imputó al foro primario la comisión de los siguientes errores:

> El Tribunal de Primera Instancia erró al interpretar incorrectamente el alcance de la Orden de Modificación emitida por la Corte de Título III, y ordenar la reapertura de los procedimientos, sin jurisdicción para ello.
>
> El Tribunal de Primera Instancia erró al permitir la continuación de los procedimientos, a pesar de que la

---

[13] *Véase*, apéndice del recurso, a las págs. 199-208.

[14] *Íd.*, a las págs. 211-230.

[15] *Íd.*, a las págs. 231-233.

demandante-recurrida presentó un *proof of claim* ante la Corte de Título III.

El 19 de marzo de 2024, la señora Rodríguez Matos presentó su oposición a la petición de *certiorari*.

II

El 30 de junio de 2016, entró en vigor la ley intitulada *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA), 48 USC secs. 2101, *et seq.* La referida legislación busca brindar al Estado Libre Asociado de Puerto Rico y sus agencias e instrumentalidades acceso a los procesos judiciales de reestructuración de deuda. *Véase*, R. Emanuelli Jiménez, *PROMESA*, 1ra ed., Puerto Rico, Ed. SITUM, 2017, pág. 48.

La sección 301 de PROMESA, 48 USC sec. 2161, incorporó a dicha ley las disposiciones concernientes a las paralizaciones automáticas del Código de Quiebras de los Estados Unidos, según recogidas en sus secciones 362(a) y 922(a); 11 USC secs. 362(a) y 922(a). Al amparo de las antedichas secciones, **una vez alguna de las entidades cubiertas hiciera su petición de quiebra ante el Tribunal de los Estados Unidos para el Distrito de Puerto Rico, se activaría una paralización sobre todas las acciones civiles, administrativas o de otra índole que se intentaran iniciar o se hubieran iniciado contra la entidad con anterioridad a la fecha de la petición de quiebra**. Dicha paralización beneficiaría únicamente a la entidad que presentase la solicitud de quiebra, salvo que el Tribunal de Distrito entendiera prudente extender la protección a otros codemandados en el pleito.

El **3 de mayo de 2017**, el Estado presentó su petición de quiebra ante el Tribunal de Distrito de Puerto Rico al amparo del Título III de PROMESA. Consecuentemente, **se activó una paralización a partir de la referida fecha sobre todos los procedimientos y causas de acción que hubieran surgido con anterioridad al 3 de mayo de 2017**, y en los que estuvieran involucrados el Estado y todas las agencias y departamentos por los que este tuviera que responder.

De otra parte, el **18 de enero de 2022**, el foro federal, por voz de la jueza Laura Taylor Swain, emitió el *Confirmation Order*, el cual entró en vigor el **15 de marzo de 2022**. A raíz de dicha determinación, ese foro aprobó el plan de ajuste de la deuda de Puerto Rico, con lo cual concluyó la quiebra del Estado y garantizó, a su vez, el trato justo y equitativo de los acreedores.

En lo que nos compete, **el párrafo 59 del *Confirmation Order* tiene el efecto de paralizar las reclamaciones pasadas, presentes y futuras de todas las entidades frente al deudor, que incluye aquellos hechos que se suscitaron con anterioridad a la petición de quiebra. Este párrafo dispuso un mecanismo de interdicto permanente que, desde el 15 de marzo de 2022, sustituyó el efecto de la paralización automática que proveían las secciones 362 y 922 del Código de Quiebras Federal, recogidas en la sección 301 de PROMESA**.

> 59. **Injunction on Claims**. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, **all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property.**
>
> .       .       .       .       .       .       .       .

(Énfasis nuestro).

Por igual, el plan de ajuste dispone que el *Confirmation Order* constituirá una determinación judicial a partir de su entrada en vigor.

> 92.2 **Discharge and Release of Claims and Causes of Action**:
>
> (a)    Except as expressly provided in the Plan or the Confirmation Order, **all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose,**

**in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action**; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. **Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date)**, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

.        .        .        .        .        .        .        .

**In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability**. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

(Énfasis nuestro).

De otro lado, el *Notice* presentado en el procedimiento de quiebra ante el tribunal federal el 15 de marzo de 2022, estableció como fecha límite el 13 de junio de 2022, para que los acreedores presentaran una solicitud de pago por reclamaciones de gastos administrativos. Dispuso, además, que el acreedor que fallase en presentar dicha solicitud, en o antes de la

fecha límite del 13 de junio de 2022, quedaría vedado permanentemente de hacer valer su reclamación de pago contra el deudor.

> 1.51 Administrative Expense Claim: A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

Valga apuntar que, el 9 de septiembre de 2022, la Junta presentó en el foro federal un escrito intitulado *Response of the Financial Oversight and Management Board to Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of Process Request to be Heard*. En este, propuso: (1) extender por noventa días la presentación de la solicitud de gastos administrativos a aquellos **reclamantes post petición** que pudieran probar que no fueron adecuadamente notificados del *Notice*; (2) publicar en varios periódicos la notificación de la extensión para presentar la solicitud de gastos administrativos, en español y en inglés, no más tarde de catorce días después de la orden que declarara con lugar la moción; y, (3) excluir a cierto tipo de casos de la presentación de la solicitud de gastos administrativos; tales como, aquellos donde existieran reclamaciones contra el Gobierno que se encontrasen dentro de los límites estatutarios de $75,000.00 o $150,000.00.

Consecuentemente, el **20 de octubre de 2022**, la jueza Taylor Swain emitió su *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction* (Orden de Modificación). En esta, el tribunal extendió hasta el 18 de enero de 2023, la fecha límite para presentar la **solicitud de gastos administrativos para aquellos con reclamaciones post petición que no hubieran sido adecuadamente notificados**.

Adicionalmente, en su *Orden de Modificación* la jueza Taylor Swain modificó el alcance del *Confirmation Order* para disponer que la solicitud de gastos administrativos no sería necesaria para ciertas reclamaciones post petición; entre ellas, los casos de daños instados al amparo de la Ley de Pleitos contra el Estado, siempre y cuando la reclamación no excediera los límites estatutarios. En armonía con esa determinación, el *injunction* permanente fue modificado para autorizar la litigación de casos instados al amparo de la Ley de Pleitos contra el Estado, hasta la etapa apelativa y la etapa de ejecución de sentencia.

En su parte pertinente, el tribunal dispuso como sigue:

5. **The requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order <u>shall not apply</u> to any of the following claims or causes of action <u>arising from and after the applicable petition date</u> with respect to the Commonwealth**, ERS, and PBA and prior to the Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (iii) claims for attorneys´s fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 USC 1400 et seq., (iv) tax refund claims, and (v) **claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, to proceed to final judgment and execution, including any appeals.**

6. **The injunctions contained in section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order are modified solely to the limited extent of allowing litigation with respect to claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000**, as applicable, to proceed to final judgment and execution, including any appeals.

(Énfasis nuestro).

Entiéndase que las disposiciones antes citadas eximen a determinados reclamantes de la obligación de presentar la solicitud de gastos administrativos. En lo pertinente a la controversia ante este Tribunal, estarán exentos aquellos litigantes **cuyas causas de acción hayan surgido desde y luego de presentada la petición de quiebra**, y cuyas causas de acción contra el Estado no excedan las cuantías monetarias dispuestas en la Ley de Pleitos contra el Estado.

Adicionalmente, y leídos de manera conjunta y armoniosa, los párrafos 5 y 6 de la *Orden de Modificación*, eximen a esas mismas causas de acción del efecto del *injunction* permanente.

III

El planteamiento medular esbozado por el Estado en este recurso es precisamente la interpretación armónica del efecto de la *Orden de Modificación* sobre aquellas causas de acción en su contra, instadas con anterioridad a la presentación de la quiebra. En particular, si estas continúan cobijadas por el interdicto permanente, que sustituyó la paralización automática inicial, y que impide la reapertura del caso instado por la señora Rodríguez Matos ante el Tribunal de Primera Instancia.

En apoyo a su postura, el Estado aduce que, a la luz de que la señora Rodríguez Matos presentó su *proof of claim* ante el foro federal, es dicho foro el que ostenta jurisdicción para establecer su acreencia contra él. Por tanto, el Tribunal de Primera Instancia carece de jurisdicción sobre este caso.

Por su parte, la señora Rodríguez Matos sostiene que la *Orden de Modificación* tuvo el efecto de eximir de la prohibición interdictal a todos los casos – pre y post petición de la quiebra – siempre y cuando estos no excedieran los límites monetarios estatutarios. Es decir, como el párrafo 6 de la *Orden de Modificación* guarda silencio en cuanto a si aplica a casos pre o post petición, debemos concluir que ambos tipos de casos están exentos de la aplicación del *injunction* permanente.

Evaluados los señalamientos de error y el derecho aplicable a la controversia, concluimos que le asiste la razón al Estado. Veamos.

Según el precitado derecho, el Tribunal Supremo de Puerto Rico, en el ejercicio de su facultad constitucional para interpretar las leyes estatales y federales, es decir, en vista de su jurisdicción concurrente, ha interpretado PROMESA con el fin de auscultar si procede o no la paralización automática que provee el estatuto. *JMG Investment, Inc. v. E.L.A. et al.*, 203 DPR 708 (2017); *Lacourt Martinez v. JLBP et al.*, 198 DPR 786 (2017);

*Lab. Clínico et al. v. Depto. de Salud et al.* 198 DPR 793 (2017). Así pues, el Tribunal Supremo no ha vislumbrado impedimento alguno que le impida interpretar el referido estatuto federal cuando se trate del alcance que pudieran tener las disposiciones relacionadas a la paralización automática de pleitos.

En virtud de lo anterior, resulta forzoso concluir que el tribunal estatal posee jurisdicción para interpretar las disposiciones de PROMESA y para determinar si procede o no la paralización automática de los pleitos.

En lo que respecta a este recurso, apuntamos que, el 30 de junio de 2016, entró en vigor PROMESA. El 3 de mayo de 2017, el Estado presentó una petición de quiebra ante el Tribunal Federal de Distrito de Puerto Rico al amparo del Título III de PROMESA. Dicha petición activó una paralización sobre todos los procedimientos y causas de acción que surgieron con anterioridad al 3 de mayo de 2017, y con respecto al Estado y a todas sus agencias y departamentos por los que este tuviera que responder.

Posteriormente, el 18 de enero de 2022, el foro federal emitió una *Orden de Confirmación*, que entró en vigor el 15 de marzo de 2022. En lo pertinente a la controversia ante nuestra consideración, el párrafo 59 de la *Orden de Confirmación* tuvo el efecto de sustituir la paralización automática inherente a la presentación de la quiebra por un interdicto permanente; ello, con relación a toda reclamación que hubiese surgido en o antes la fecha de efectividad del *Plan de Ajuste* (i.e., 15 de marzo de 2022).

No obstante, el 20 de octubre de 2022, la jueza Taylor Swain emitió una *Orden de Modificación.* Esta fue promovida por la Junta de Supervisión Fiscal y, en ella, el tribunal federal extendió hasta el 18 de enero de 2023, la fecha límite para presentar la solicitud de gastos administrativos para aquellos con reclamaciones post petición, que no hubieran sido adecuadamente notificados. Asimismo, la jueza modificó el alcance del *Confirmation Order* para disponer que la solicitud de gastos administrativos no sería necesaria para ciertas reclamaciones post petición; entre ellas, los

casos de daños instados al amparo de la Ley de Pleitos contra el Estado, siempre y cuando la reclamación no excediera los límites estatutarios.

En armonía con esa modificación, el *injunction* permanente también fue modificado para autorizar la litigación de los casos post petición instados al palio de la Ley de Pleitos contra el Estado, hasta la etapa apelativa y la etapa de ejecución de sentencia.

En este caso, la señora Rodríguez Matos presentó su demanda de daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de San Juan, el 25 de agosto de 2016, por hechos ocurridos el 16 de septiembre de 2015. Así pues, concluimos que el *Confirmation Order* tuvo el efecto de paralizar su reclamación, pues esta surgió antes de la fecha de efectividad de la petición de quiebra y del *Plan de Ajuste*. De igual forma, la *Orden de Modificación* emitida el 20 de octubre de 2022, que modificó la *Orden de Confirmación* para autorizar la litigación de casos instados al palio de la Ley de Pleitos contra el Estado, hasta la etapa apelativa y la etapa de ejecución de sentencia, solo se refiere a aquellas causas de acción que hubieran surgido o hubieran sido instadas con posterioridad a la petición de quiebra el 3 de mayo de 2017.

Por tanto, concluimos que al caso del título le aplica el interdicto permanente que sustituyó la paralización automática inherente a la presentación de la quiebra por el Estado[16]. Opinamos que concluir lo contrario conllevaría dar al traste con el proceso de quiebra del Estado y con la adjudicación equitativa de las acreencias reconocidas en dicho proceso[17].

---

[16] Este panel es consciente de la *Resolución* dictada por un panel hermano el 29 de noviembre de 2023, en el recurso KLCE202301116, *Christian Peña Betances v. ELA, y otros*. En ella, el panel hermano, ante una situación de hechos igual o similar a la que hoy atendemos, optó por no expedir el auto. Así pues, la determinación del foro primario de reabrir los procedimientos ante sí se mantuvo en vigor. Esa resolución fue objeto de un recurso de *certiorari* instado por el Estado ante el Tribunal Supremo de Puerto Rico. No obstante, a esta fecha, el Tribunal Supremo no se ha expresado.

[17] Reiteramos que, en este caso, la señora Rodríguez Matos no solo presentó oportunamente su *proof of claim* ante el foro federal, sino que así también presentó su *Evidencia de reclamo por gastos administrativos*. Si bien no hemos sido informados del estatus de ambas gestiones, tenemos que concluir que es el foro federal al que le corresponde atender la validez y procedencia de las cuantías allí reclamadas por la señora Rodríguez Matos.

IV

A la luz de los hechos y el derecho antes expuestos, expedimos el auto de *certiorari* y revocamos el dictamen del Tribunal de Primera Instancia, Sala Superior de San Juan, del 14 de diciembre de 2023. En consecuencia, ordenamos la paralización de los procedimientos ante el foro primario.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones